# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

BILLY EUGENE STEWART,     )
                                     )
      Plaintiff,           )
                                     )
VS.                           )        No. 15-1204-JDT-egb
                                     )
HARDEMAN COUNTY      )
CORRECTIONAL FACILITY, ET AL.,  )
                                   )
      Defendants.     )

---

### ORDER DISMISSING CLAIMS,
### CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
### AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

---

On August 19, 2015, Plaintiff Billy Eugene Stewart ("Stewart"), who is currently an inmate at the Trousdale Turner Correctional Center ("TTCC") in Hartville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 regarding allegations at the Hardeman County Correctional Facility ("HCCF") in Whiteville, Tennessee. (ECF No. 1.) After receiving a court order (ECF No. 3), on August 28, 2015, Stewart filed a motion to proceed *in forma pauperis*. (ECF Nos. 4.) In an order issued September 2, 2015, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 5) The Clerk shall record the defendants as HCCF, Correction Corporation of America ("CCA"), Chief First Name Unknown ("FNU")

Ponds, Case Manager and Acting Unit Manager Betty Hill, Case Manager Kristy White, and Security Captain FNU Cannon.[1]

## I. The Complaint

Stewart alleges that on May 10, 2015, between 5:30 p.m. and 6:45 p.m., he was talking to inmate Jacobs ("Jacobs") who was intravenously using Suboxone. (Compl. at 4, ECF No. 1.) After he "'shot up," Jacobs slung Stewart onto his bunk and proceeded to sexually assault him. (*Id.*) Stewart began screaming and trying to get Jacob off and was able to grab Jacobs's genitals, pulling as hard as he could. (*Id.*) Jacobs's cellmate, Brown, came back into the cell (the cell door had been opened by the c/o), and saw Stewart jump up and run out of the cell. (*Id.*) Stewart ran to his own cell and pushed the emergency call button. (*Id.* at 4-5.)

Stewart alleges he first spoke with c/o Arthur, who is not a party to this complaint, and was told that he would be helped after shift change. (*Id.* at 5.) Around 8:45 p.m. Stewart spoke with Defendant Cannon, who told Stewart he was lying and told him to go back to his cell. (*Id.*) Stewart contends that he pled with Defendant Cannon to listen to him, but Defendant Cannon "completely dismissed it." (*Id.*)

Jacobs then allegedly threatened Stewart saying that if Stewart told anyone, he would "never see the rest of [his] life." (*Id.*) Stewart became scared and sent out "'Kites'"[2] to Defendants Hill and White. (*Id.*) Stewart did not hear anything until May 12, 2015, when Senior Officers Robertson and Cruz, who are not parties to this complaint, came to Stewart's cell to move him to segregation. (*Id.*) Stewart asked why he was being moved to segregation, but the officers did not know. (*Id.*) After being placed in segregation, Stewart contends that

---

[1] The Clerk is DIRECTED to add Security Captain FNU Cannon pursuant to Stewart's complaint, (Compl. at 4, ECF No. 1.)

[2] "Kite" is a common prison term for a letter sent within the jail.

Defendant Ponds called Stewart to his office where he was questioned by Assistant Warden Adams, Assistant Chief Geneva Roberts, Defendant Mills and a woman from internal affairs. (*Id.*) Stewart alleges that he told them about the assault, not for the first time, that Jacobs had become obsessed with him as indicated by thirteen letters and a picture Jacobs sent to Stewart, and that he wanted to be seen by the mental health staff. (*Id.* at 5-6.) Stewart alleges that although he was seen by medical, he was never taken to the hospital despite sending over ten requests for medical/mental health services as well as letters to Defendant Ponds, Assistant Chief Roberts, and Assistant Chief Adams begging for help with mental issues such as flashbacks and nightmares of a "past rape" as a child. (*Id.* at 6.) Stewart never received a response and was never seen by mental health services. (*Id.*) Stewart continued to write request and grievances, but nothing was done and Jacobs was never charged or disciplined for his actions. (*Id.*) On May 28, 2015, Stewart was transferred to another facility where he received the medical/mental health he had requested. (*Id.*)

Stewart seeks to have defendants be held liable for not following protocol, to have Jacobs charged, and to have defendants pay for damages for physical and mental suffering. (*Id.* at 7-8.)

## II. Analysis

A. <u>Screening and Standard</u>

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

    (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

    (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept

> "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.      § 1983 Claim

Stewart filed his complaint on the court-supplied form for actions under 42 U.S.C.

§ 1983.  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) a deprivation

of rights secured by the "Constitution and laws" of the United States (2) committed by a

defendant acting under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150

(1970).

1.      *Claims against CCA*

The Court construes Stewart's claims against the HCCF as an attempt to assert claims

against CCA, a private corporation which operates this facility.  However, the complaint does

not assert a valid claim against CCA.  "A private corporation that performs the traditional state

function of operating a prison acts under color of state law for purposes of § 1983."  *Thomas v.

Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810,

814 (6th Cir. 1996)); *see also Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012)

(corporation that provides medical care to prisoners can be sued under § 1983).  The Sixth

Circuit has applied the standards for assessing municipal liability to claims against private

corporations that operate prisons or provide medical care to prisoners.  *Thomas*, 55 F. App'x at

748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001). CCA "cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). Instead, to prevail on a § 1983 claim against CCA, Plaintiff "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Id.* The complaint does not allege that Stewart suffered any injury because of an unconstitutional policy or custom of CCA.

2.     *Claims for Medical Indifference*

Stewart complains about being denied medical treatment, specifically the denial of mental health treatment. For a convicted prisoner, such claims arise under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991).

Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,'. . . proscribed by the Eighth Amendment." However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.*, at 106.

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298; *Williams v. Curtin*, 631 F.3d at 383; *Mingus v. Butler*, 591 F.3d 474,

479-80 (6th Cir. 2010).  The objective component requires that the deprivation be "sufficiently serious."  *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298.

Within the context of *Estelle* claims, the objective component requires that the medical need be sufficiently serious.  *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992).  "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977)).

To make out a claim of an Eighth Amendment *Estelle* violation, a prisoner must plead facts showing that "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury."  *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976).  The Supreme Court clarified the meaning of deliberate indifference in *Farmer v. Brennan*, as the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice.  *Id*. 511 U.S. at 835-36.  Thus,

> [a] prison official cannot be found liable under the Eighth Amendment for *denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.*  This approach comports best with the text of the Eighth Amendment as our cases have interpreted it.  The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."  An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation.  The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . .  But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment."). "'[D]eliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 836). "A medical decision not to order an X-ray, or like measures, does not represent cruel or unusual punishment." *Estelle*, 429 U.S. at 107.

Stewart fails to allege that he suffered any physical harm as a result of the assault. Under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Further, Stewart was initially given treatment by the medical staff who did not provide further treatment. If the medical staff did not see an obvious need, it is difficult to see how prison officials, such as Defendants, would come to a different conclusion.

3. *Claims seeking Charges*

The decision of whether to institute state or federal criminal proceedings is a decision committed wholly to the discretion of the State District Attorney or the United States Attorney. This Court cannot order that Jacobs be charged with a crime, nor that Defendants have violated Stewart's rights by not deciding to institute criminal proceedings..

III. Standard for Leave to Amend

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissals under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir.

Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts.").

## IV. Appeal Issues

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

## V. Conclusion

The Court DISMISSES Stewart's complaint as to the Defendants for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to Amend is DENIED because the deficiencies in Stewart's complaint cannot be cured. It is also CERTIFIED, pursuant to 28 U.S.C. §1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

 s/James D. Todd
JAMES D. TODD
UNITED STATES DISTRICT JUDGE